IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| SPAJI, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br><br>COMMUNITY RESOURCE CREDIT UNION, a credit union,<br><br><br>Defendant. | CIVIL ACTION NO. 1:25-cv-01202<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND**

Plaintiff SPAJI, INC. (SPAJI") hereby complains of Defendant Community Resource Credit Union ("CRCU") and alleges as follows:

## PARTIES

1. SPAJI is a Nevada corporation with a principal place of business at 880 Northwood Blvd., Suite E, Incline Village, NV 89451.

2. SPAJI is the owner of the U.S. Patent No. 9,361,878 (the "Asserted Patent").

3. On information and belief, CRCU is a credit union with a principal place of business at 3110 Rollingcreek Dr, Baytown, TX 77521. CRCU's registered agent is Russell Ballard, and he is located at 3110 Rollingcreek Dr, Baytown, TX 77521.

## JURISDICTION AND VENUE

4. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1 et seq. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. CRCU is subject to personal jurisdiction in the State of Texas and this District because it has caused tortious injury to SPAJI through its acts of patent infringement in this District, and, on information and belief, regularly does or solicits business, or engages in a persistent course of conduct in this District or derives substantial revenue from things used or consumed in this District. For example, CRCU states on its website that businesses located in numerous counties, cities, and school districts in Texas may become members of CRCU. CRCU makes the Community Resource Alexa Skill available to all its online banking customers.

6. Venue in this District is proper pursuant to 28 U.S.C. § 1400 because CRCU has committed acts of infringement in this District, as alleged in paragraph 5 above, and has multiple regular and established places of business in this District, including locations in the cities of Austin,

Boerne, Castle Hills, Castroville, El Paso, Georgetown, New Braunfels, Pleasanton, Round Rock, San Antonio, Schertz, Spring Branch, Uvalde, and Waco. For example, CRCU has multiple regular and established places of business in the City of Austin at the following shared branch locations: 1101 North IH 35; 5033 US Hwy. 290 W.; 1718 Lavaca St.; 1180 Airport Blvd.; 4611 Guadalupe St.; 1900 Woodward St.; 114 E. Huntland Dr.; 621 W. St. Johns Ave.; 3305 Steck Ave.; 6001 W. William Cannon Dr.; 9925 Brodie Ln.; 12319 North Mopac Expressway Bld. A; 13609 N I H 35 Bldg. 4; and 13860 Hwy. 183 N. At these shared branches, CRCU customers can walk in and complete transactions like deposits, loan payments, balance transfers, money orders, and traveler's checks.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

7. Plaintiff SPAJI was formed in 2018 and has been in continued existence and operation since that time.

8. SPAJI is the assignee of U.S. Patent No. 9,361,878 (the "'878 Patent"), entitled "COMPUTER-READABLE MEDIUM, SYSTEM, AND METHOD OF PROVIDING DOMAIN-SPECIFIC INFORMATION," which issued on June 7th, 2016. A copy of the '878 Patent is attached as Exhibit 1 hereto.

9. The invention claimed in the '878 Patent was the result of extensive research and development on systems and methods of providing domain-specific information. When the inventor conceived of the patented invention, conventional systems and methods of providing domain-specific information were limited to allowing a user to, through a voice command, obtain information from a single domain or enterprise, such as a particular credit card company or a particular bank. *See, e.g.*, Ex. 1 at 1:14-27. The inventor aspired to create innovative systems and methods to allow a user to, through a voice command, obtain information from one of many

domains by providing instructions to a device that enable the device to automatically select from one of numerous domains based on a natural language request corresponding to the user's voice command.  The invention represents a significant improvement in the provision of domain-specific information, allowing a user to issue a voice command to a device, have that device receive a natural language request corresponding to that voice command, and to automatically obtain requested information based on that natural language request from one of numerous domains rather than being limited to obtaining information from only a particular domain at a time (e.g., by using a voice response system associated with a particular domain).  *See, e.g.*, Ex. 1 at 2:27-39.  The patent describes application selection logic to determine which application to use based on the text converted from a user's instruction.  *See, e.g.*, Ex. 1 at 3:47-60.  The patent also describes using data retrieval logic to retrieve and filter account information, including by scraping data from a web page of a particular domain-specific system. *See, e.g.*, Ex. 1 at 4:49-56.  The patent discloses numerous embodiments, including one embodiment in which the data retrieval logic resides on a data retrieval system and another embodiment in which the data retrieval logic resides on a portable communications device.  *E.g.*, Ex. 1 at Figs. 1-4 (and associated text).  The inventor addressed the shortcomings of traditional methods and systems by, among other things, developing data retrieval logic, application selection logic, and other improvements described in the specification of the '878 Patent.

10.  At the time of the priority date of the '878 Patent, it was not well-understood, routine, or conventional to allow a user to obtain information from one of numerous domains by providing instructions to a device that enable the device to automatically select from one of numerous domains based on a natural language request corresponding to the user's voice command.  The claimed invention removes the limitation of older systems that restricted a user to obtaining

information from only a particular domain at a time by, for example, using a voice response system associated with that domain. By doing so, the claimed invention allows a user to save time and effort by automatically obtaining information, based on a natural language request corresponding to a voice command, from one of numerous domains.

11. The claims of the '878 Patent do not preempt the field or preclude the use of other systems and methods of providing domain-specific information. Rather, the claims are directed to specific systems and methods for providing domain-specific information. For example, the Examiner recognized that, "the prior art of record does not teach or fairly suggest the limitations of automatically selecting an application from a plurality of applications based on the natural language request, the selected application configured to retrieve the action information from selected ones of a plurality of domain-specific data sources; retrieving account information associated with the user from a domain-specific data source of the plurality of domain-specific data sources through a network based on the natural language request filtering the account information based on the natural language request to produce output information, the output information including a portion of the account information according to the natural language request." The solution of the '878 Patent has improved such systems and methods and related technology.

12. SPAJI licenses one or more of its patented technologies to ENACOMM, Inc. ("ENACOMM"). No later than 2018, ENACOMM has marketed and sold the systems and methods of providing domain-specific information claimed in the '878 Patent to partners. ENACOMM has earned significant revenue through such sales. Among other solutions, ENACOMM provides the ENACOMM Virtual Personal Assistant ("VPA"), which is an interactive voice response offering that leverages technologies offered by Amazon, Google, and

Apple, and allows customers of ENACOMM's partners to use their voice to obtain information regarding their financial accounts, including their checking, money market, savings, loan, CD, and credit card accounts. For example, ENACOMM provides a VPA system that enables its partners to provide Alexa Skills to its customers such that they may obtain real-time financial account information by issuing a voice command to an Alexa device. ENACOMM's technology allows ENACOMM's partners to provide their customers a convenient, around-the-clock option to request, through a voice command, real-time financial account information, reducing customer demands on traditional customer service options, such as call centers.

13. CRCU offers its Community Resource Alexa Skill ("Accused Product") for use in conjunction with Amazon Alexa products.

14. Since 2020, CRCU has offered and continues to offer the Community Resource Alexa Skill on the Amazon Alexa Skills Store. On information and belief, CRCU, in building the Community Resource Alexa Skill, created a set of invocation words, sample utterances, and "intents" that it provided to the Alexa Skills Kit. These utterances and intents provide instructions to allow the Alexa system, comprising an Alexa device, the Community Resource Alexa Skill, and the Alexa Cloud, to recognize certain voice commands and perform designated actions in response.

15. To the extent the preamble is limiting, CRCU meets it through its use of the Alexa system by providing the Community Resource Alexa Skill to customers and instructing them to enable and set up the Community Resource Alexa Skill on their Alexa App. The Alexa App then implements the skill on connected Alexa devices. An Alexa device, such as the Amazon Echo Show 15, which was released in 2021, is a portable communications device with a processor and a computer readable storage. An Alexa device, on which the Community Resource Alexa Skill has been enabled, using instructions provided by CRCU, performs a method comprising the steps

as described below.

16. The Alexa system "receiv[es] a natural language request corresponding to an audio input associated with a user." On information and belief, when a customer issues an utterance to the Alexa device, such as "Alexa[,] ask Community Resource how much I have in my checking account," the Alexa device uses the utterances provided by CRCU for the Community Resource Alexa Skill to convert the audio input to a natural language request, which is then transmitted to the Alexa cloud. In other instances, the Alexa device has transmitted, or continues to transmit, the audio input directly to the Alexa cloud. In all instances, the audio input had been received, or continues to be received, as a natural language request because, on information and belief, CRCU had provided, and continues to provide programming, such as sample utterances, for the Community Resource Alexa Skill to the Alexa Skills Kit. Such sample utterances have been required, and continue to be required, to render the Alexa Skill usable.

17. The Alexa system "automatically select[s] an application from a plurality of applications based on the natural language request." An Alexa device, by default, has built-in applications. Alexa skill developers must ensure that the invocation names for their skills do not overlap with commands for built-in Alexa applications. CRCU's invocation name for the Community Resource Alexa Skill is Community Resource. The Community Resource Alexa Skill is an application. When a customer issues the CRCU invocation word and utterance to the Alexa device, such as, "Alexa[,] ask Community Resource how much I have in my checking account," the Alexa system prepares a natural language request and uses the coding for utterances and intents provided by CRCU for the Community Resource Alexa Skill to automatically select the Community Resource Alexa Skill from a plurality of available applications.

18. The Community Resource Alexa Skill is "configured to retrieve the account

information from selected ones of a plurality of domain-specific data sources." On information and belief, CRCU stores the account information of its customers on its own servers or on the servers of one or more third-party financial data management solutions providers, such as Fiserv, based on various criteria, such as the type of account (e.g., checking, general savings, money market, IRA, and loan accounts). Accordingly, on information and belief, the Community Resource Alexa Skill is configured to retrieve account information from a plurality of domain-specific data sources.

19. The Alexa system "retriev[es] account information associated with the user from a domain-specific data source of the plurality of domain-specific data sources through a network based on the natural language request." On information and belief, the Community Resource Alexa Skill uses intents mapped to sample utterances to retrieve the claimed account information, where the intents and utterances are provided to the Alexa system by CRCU. Based on the user's natural language request, and the sample utterances and intent provided by CRCU, the Alexa system creates an intent request to retrieve the account information associated with the user from a domain-specific data source of the plurality of domain-specific data sources (as discussed above). The Alexa system obtains the account information through a network, namely the Internet. In this way, the Alexa system retrieves the claimed account information.

20. The Alexa system "filter[s] the account information based on the natural language request to produce output information, the output information including a portion of the account information according to the natural language request." On information and belief, the Community Resource Alexa Skill uses sample utterances and intents provided by CRCU to the Alexa system to provide account information, including account balances, recent transactions, customer profile information, account numbers, and metadata to the Alexa system. On information and belief,

based on the sample utterances and intents provided by CRCU to the Alexa system, the Alexa system filters account information not directly responsive to the customer request for, e.g., account balance or recent transactions, such as customer profile information, account numbers, and metadata.

21. The Alexa system "provid[es] the output information to an output interface." When a customer provides certain commands, such as "What is my checking account balance?", the Alexa device will provide that information.

22. CRCU performs or causes to be performed all limitations of the device of Claim 1 when a user provides an oral instruction to Alexa. CRCU directly benefits from the use of all limitations of the device of Claim 1.  CRCU benefits by allowing its customers to have a convenient, around-the-clock option to ask an Alexa device, through a voice command, for information, such that the device automatically selects and opens the Community Resource Alexa Skill from among other available Skills, and retrieves the requested information using the Alexa device.  CRCU touts to customers that, "[g]etting your account balances and transaction history is even easier with the Community Resource Alexa Skill!"  On information and belief, CRCU also benefits by reducing customer demands on traditional customer service options, such as call centers.

23. CRCU encourages customers to enable and set up the Community Resource Alexa Skill in the Alexa app.  CRCU also encourages customers to issue certain verbal prompts to an Alexa device to obtain information regarding their CRCU accounts from the Alexa device with the Community Resource Alexa Skill enabled.  For example, a customer can ask the Alexa device for his or her CRCU checking account balance, savings account balance, recent transactions, or account balances by using the following exemplary prompts: "What is my checking account

balance?"; "What is my savings account balance?"; "What recent transactions were made from my checking account?"; and "What is the balance for my savings account?"

## COUNT I

### (Patent Infringement of the '878 Patent)

24. SPAJI incorporates by reference all previous allegations as though set forth fully herein.

25. SPAJI and any of its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '878 Patent, and SPAJI is entitled to damages for CRCU's past infringement.

26. CRCU has infringed, and continues to infringe, one or more claims of the '878 Patent, including at least Claim 1, under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making and using its Community Resource Alexa Skill.

27. CRCU's infringing acts are without license or authorization from SPAJI.

28. By no later than the time of the filing of this action, CRCU knew, or should have known, that its actions constitute infringement of the '878 Patent. CRCU has nonetheless continued in its infringement.

29. CRCU's acts of infringement of the '878 Patent recited herein are being committed with full knowledge of SPAJI's rights in the '878 Patent. On information and belief, CRCU is continuing to act despite an objectively high likelihood that its actions constituted direct infringement of a valid patent, and has known of that objectively high risk since at least the filing of this Complaint and/or the date this Complaint was served upon CRCU. Pursuant to 35 U.S.C. § 284, SPAJI is entitled to damages for CRCU's infringing acts. CRCU's acts further constitute willful and deliberate infringement, entitling SPAJI to enhanced damages under 35 U.S.C. § 284

and reasonable attorneys' fees and costs under 35 U.S.C. § 285.

30. As a direct and proximate result of CRCU's infringement of the '878 Patent, SPAJI has suffered irreparable injury for which it has no adequate remedy at law. Unless CRCU is permanently enjoined from further infringement of the '878 Patent, SPAJI will continue to suffer irreparable injury and impairment of the value of its patent rights.

## COUNT II

### (Indirect Patent Infringement of the '878 Patent)

31. SPAJI incorporates by reference all previous allegations as though set forth fully herein.

32. CRCU, knowing its products infringe the '878 Patent and with the specific intent for others to infringe the '878 Patent, induced infringement of one or more claims of the '878 Patent under 35 U.S.C. § 271(b) both literally and/or under the doctrine of equivalents by, among other things, actively inducing others, including CRCU's customers, to infringe the '878 Patent. On information and belief, CRCU accomplishes such inducement by directing and/or instructing others to assemble, use, and/or operate the devices that are the subject of at least Claim 1 of the '878 Patent.

33. On information and belief, CRCU has also contributed to the infringement of one or more claims of the '878 Patent under 35 U.S.C. § 271(c) both literally and/or under the doctrine of equivalents by making and using one or more components of the devices that are the subject of at least Claim 1 of the '878 Patent, such as the Community Resource Alexa Skill, knowing such components to be especially made or adapted for use in an infringement of the '878 Patent and not suitable for any substantial non-infringing use.

34. CRCU's infringing acts are without license or authorization from SPAJI.

35. By no later than the time of the filing of this action, CRCU knew, or should have known, that its actions constitute infringement of the '878 Patent. CRCU has nonetheless continued in its infringement.

36. CRCU's acts of infringement of the '878 Patent recited herein are being committed with full knowledge of SPAJI's rights in the '878 Patent. On information and belief, CRCU has acted, and is continuing to act, despite an objectively high likelihood that its actions constituted infringement of a valid patent, and knew, or should have known, of that objectively high risk since at least the filing of this Complaint and/or the date this Complaint was served upon CRCU. Pursuant to 35 U.S.C. § 284, SPAJI is entitled to damages for CRCU's infringing acts. CRCU's acts further constitute willful and deliberate infringement, entitling SPAJI to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs under 35 U.S.C. § 285.

37. As a direct and proximate result of CRCU's infringement of the '878 Patent, SPAJI has suffered irreparable injury for which it has no adequate remedy at law. Unless CRCU is permanently enjoined from further infringement of the '878 Patent, SPAJI will continue to suffer irreparable injury and impairment of the value of its patent rights.

## **PRAYER FOR RELIEF**

**WHEREFORE**, SPAJI respectfully requests that the Court enter judgment:

A. That CRCU has infringed and is infringing the Asserted Patent both literally and/or under the doctrine of equivalents;

B. That CRCU has induced, and is inducing, infringement of the Asserted Patent;

C. That CRCU has contributed to, and is contributing to, infringement of the Asserted Patent;

D. That CRCU has willfully infringed, and is willfully infringing, the Asserted Patent;

E. That the Asserted Patent is valid and enforceable;

F. That CRCU, its officers, agents, and employees, and those persons in active concert of participation with any of them, and its successors and assigns be preliminary and permanently enjoined from infringement of the Asserted Patent;

G. For an accounting for any infringing sales not presented at trial and an award by the Court of additional damages for any such infringing sales;

H. That CRCU be ordered to account for, and pay to, SPAJI the damages resulting from CRCU's infringement of the Asserted Patent, including lost profits, together with interests and costs, and all other damages permitted by 35 U.S.C. 284, including enhanced damages up to three times the amount of damages found or measured, but in any event no less than a reasonable royalty;

I. That this action be adjudged an exceptional case and SPAJI be awarded its attorneys' fees, expenses, and costs in this action pursuant to 35 U.S.C. § 285; and

J. That SPAJI be awarded such other equitable or legal relief as this Court deems just and proper under the circumstances.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, SPAJI hereby demands a trial by jury as to all triable issues.

August 1, 2025                                    Respectfully submitted,

                                                     */s/ Jennifer P. Ainsworth*
Michael K. Friedland (SBN 157,217)
michael.friedland@fciplaw.com
David G. Kim (SBN 307,821)
david.kim@fciplaw.com
Matt T. Pham (SBN 341,320)
matt.pham@fciplaw.com
FRIEDLAND CIANFRANI LLP
17901 Von Karman Ave., Ste. 925
Irvine, CA 92614
949-734-4900

Jennifer Parker Ainsworth
TX State Bar No. 00784720
jainsworth@wilsonlawfirm.com
WILSON ROBERTSON &
VANDEVENTER, P.C.
909 ESE Loop 323, Suite 400
Tyler, TX 75701
Telephone: (903) 509-5000
Facsimile: (903) 509-5091

*Attorneys for Plaintiff SPAJI, Inc.*